# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK

DANIELLE P.,[1]

                                          Plaintiff,

          v.                                          3:23-CV-693
                                                      (MJK)

MARTIN J. O'MALLEY,

                                          Defendant.

PETER A. GORTON ESQ., for Plaintiff
GEOFFREY M. PETERS, Special Asst. U.S. Attorney, for Defendant

MITCHELL J. KATZ, U.S. Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff commenced this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security, denying her application for benefits. This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 7). Both parties filed briefs (Dkt. Nos. 10, 12, 13), which the court treats as motions under Fed. R. Civ. P. 12(c), in accordance with General Order 18.

---

[1]  In accordance with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 to better protect personal and medical information of non-governmental parties, this Memorandum-Decision And Order will identify the plaintiff using only her first name and last initial.

1

## I.   PROCEDURAL HISTORY

On June 22, 2020, plaintiff filed an application for Supplemental Security Income ("SSI"), alleging disability beginning January 31, 2019. (Administrative Transcript ("T.") 13, 258-64). Plaintiff's application was denied initially on November 3, 2020 (T. 15, 95, 120-25), and upon reconsideration on March 29, 2021 (T. 15, 146-57). On August 23, 2021, Administrative Law Judge ("ALJ") Elizabeth W. Koennecke conducted a hearing during which plaintiff testified. (T. 34-63). A supplemental hearing was conducted on January 4, 2022 during which Richard Hall, a vocational expert ("VE Hall"), testified. (T. 64-73). On January 19, 2022, the ALJ issued a decision denying plaintiff's claim. (T. 13-33). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on April 19, 2023. (T. 1-3).

## II.   GENERALLY APPLICABLE LAW

### A.   Disability Standards

To be considered disabled, a plaintiff seeking DIB or SSI must establish that she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months . . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

2

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities.  If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience . . .  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Selian v. Astrue,* 708 F.3d 409, 417 (2d Cir. 2013*); see also* 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920.

The plaintiff has the burden of proof to establish a disability at the first four steps. *Selian,* 708 F.3d at 418. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden shifts to the Commissioner to prove the final step. *Id.*

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court "is limited to whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012); *see also Brault v. Soc. Sec. Admin., Com'r*, 683 F.3d

443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Talavera,* 697 F.3d at 151.  It must be "more than a scintilla" of evidence scattered throughout the administrative record.  *Id.* However, this standard is a very deferential standard of review "even more so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448. "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *see also Selian,* 708 F.3d at 417 ("the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn") (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983)). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Id.*; *see also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record.  *See Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("[W]e are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony[.]"). However, the ALJ cannot "'pick and choose' evidence in the record that

supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *see also Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

Plaintiff was approximately 45 years old on the alleged disability onset date in 2019. (T. 37). She earned a high school degree. (T. 37). At the time of her administrative hearing in 2021, plaintiff lived in a two-story house with her husband and son. (T. 57, 62). Plaintiff did not drive. (T. 62).

Among other prior employment, plaintiff worked as a bank teller manager, bank branch manager, waitress and bartender. (T. 38-39). Plaintiff testified that in her capacity as a bank teller manger, she sat for approximately 20% of the day and stood about 80% of the time. (T. 38). Plaintiff also testified that there was not much lifting involved in her position as a bank teller manager. (*Id.*). When Plaintiff was promoted to bank branch manager, plaintiff testified that she sat for approximately 60% of the day and stood for about 40% of the day. (T. 39). Plaintiff testified that as a bartender and waitress, she stood for approximately 95% of the time and lifted approximately twenty pounds. (T. 40).

Plaintiff testified that she suffers from post-traumatic stress syndrome ("PTSD") and bipolar disorder with severe mania and depression. (T. 40). Plaintiff further testified that she suffers from osteoarthritis, cervical stenosis, severe lower lumbar stenosis and "probably" rheumatoid arthritis. (T. 40-41).

Plaintiff testified that during the day, her PTSD causes her to act our either emotionally or physically and will also "make[] [her] want to run away from situations or places or whatever it may be." (T. 41). Plaintiff also testified that she experiences

severe night terrors if she does not take her medication. (*Id.*). Plaintiff also experienced nightmares when she napped during the day. (*Id.*). According to plaintiff, there are "things here and there that will set [her] off in some type of way" about once a week. (T. 42). When that happens, plaintiff testified that "it can be so overwhelming" that she has "to stop [herself] and lay down" because "[she's] all over the place." (*Id.*).

Regarding her bipolar disorder, plaintiff testified that "she can't control her thoughts and they go to really odd places that aren't really based in reality and sometimes [she] know[s] this and still can't stop [herself]." (T. 43). Plaintiff also testified that when she is manic, she will "think things, like, that aren't real" and has a tendency "to think that there's something wrong with [her]." (*Id.*).

Plaintiff testified that her personality disorder makes her paranoid. (T. 44). Plaintiff will "think things that aren't actually real" which will make her "really emotional," "angry," "shut down" and not want to "be around people." (*Id.*). Plaintiff also testified that her paranoia is difficult to manage in the workplace when she wants to cry or becomes angry, because she needs to remove herself from the situation. (T. 45). Plaintiff has periods of time that she must stop working and just be by herself. (*Id.*). Plaintiff testified that her anxiety is "really severe," depending on what she is doing. (*Id.*). Plaintiff becomes anxious which causes depression. (T. 46).

Plaintiff testified that standing for more than an hour is difficult because her "lumbar stenosis is so severe and [her] degenerative disk down in there is – makes [her] muscles [spasm] to the point where [she] [has] to stretch or bend over or sit down." (T. 46). Also, plaintiff cannot walk for more than thirty minutes "because the same thing happens." (T. 46-47). Plaintiff testified that she is affected by the weather and that there are days that her "feet hurt just to stand on the floor." (T. 47).

6

In terms of sitting, plaintiff testified that she could sit "[m]aybe an hour to an hour and a half tops" because her "hands tend to go numb and [she] can't feel her fingertips." (T. 48). Plaintiff testified that she would drop things when this occurred. (*Id.*).

Plaintiff testified that she sleeps approximately five hours each night. (T. 50). In the morning, plaintiff testified that it "takes [her] a while to get moving . . . because [she's] stiff." (*Id.*). Plaintiff also testified that "it could be maybe noon before [her] full feeling in [her] hands" returned (*Id.*), and that it takes her a "couple of hours to actually get [herself] up because [she] also takes medication [.]" (*Id.*). Plaintiff testified that she takes Seroquel in the morning which causes "brain fog" and that it takes her a "couple of hours to physically and, you know, with the medications, get [herself] together." (T. 51-52). Plaintiff also took Cyclobenzaprine for muscle spasms, which she tries to avoid during the day, because the medication made her tired and unable to think clearly at work. (T. 52).

Plaintiff testified that she has flare ups and/or bad days "at least once a week." (T. 53). On a "bad day," plaintiff testified that she would eat, ice her wrists, take naps, and put her feet up. (T. 54). Plaintiff also testified that her physical and mental conditions can "feed off each other." (T. 54). On better days, plaintiff testified that she can fold laundry, cook dinner, "hang out" with her dog, and go outside. (T. 55). Even on good days, plaintiff testified that she is tired in the morning and still requires a nap in the early afternoon multiple days a week. (T. 55-56).

Plaintiff testified that she received injections in her back which provided pain relief. (T. 58). Plaintiff also smoked "less than half a pack [of cigarettes] a day" and did not eat sugar. (T. 58-60).

7

In response to the hypothetical posed to him by the ALJ at the January 4, 2022 supplemental hearing, VE Hall testified that plaintiff could work as a mail sorter, office helper or retail marker at the light exertional level. (T. 69). At the sedentary level, VE Hall testified that plaintiff could work as a document preparer, addresser, or monitor. (T. 70). VE Hall further testified that he relied on the U.S. Department of Labor Bureau of Statistics, a public domain computer resource called SkillTran and periodic educational conferences to determine the number of jobs available for each job title. (T. 71).

When questioned by plaintiff's counsel, VE Hall testified that for the jobs he identified, that if a worker is "off task for any reason greater than 10% of the workday outside of regular breaks, identified as two 15-minute rest periods and a half hour meal period, it would have a negative vocational impact and preclude all jobs." (T. 72). VE Hall further testified that "after the onset of symptoms that would cause a worker not to report for duty in the beginning most employers [would] tolerate that person not on the job one or two days per month" and that "[i]f that attendance behavior continue[d] month after month, there would be no work." (*Id.*).

## IV.   <u>THE ALJ'S DECISION</u>

The ALJ determined at step one of the sequential evaluation that plaintiff had not engaged in substantial gainful activity since June 22, 2020, the application date. (T. 15). Next, the ALJ found that plaintiff has the following severe impairments: degenerative disk disease of the cervical and lumbar spine and all mental diagnoses as variously characterized. (T. 15). At the third step, the ALJ determined that plaintiff's impairments did not meet or medically equal the criteria of any listed impairments in Appendix 1 to 20 C.F.R. Part 404, Subpart P.  (T. 17).

8

Next, the ALJ found that plaintiff had the residual functional capacity ("RFC")

> to perform light work, as defined in 20 CFR 416.967(b). She can
> never climb ladders, ropes, or scaffolds, but can occasionally stoop
> and kneel, and has no limitations for balancing or climbing ramps and
> stairs. Mentally, the claimant retains the ability to understand and
> follow simple instructions and directions, perform simple tasks
> independently, maintain attention and concentration for simple tasks,
> and regularly attend to a routine and maintain a schedule. She can
> relate to and interact appropriately with all others to the extent
> necessary to carry out simple tasks. The claimant can also handle
> simple, repetitive, work-related stress, in that she can make occasional
> decisions that are directly related to the performance of simple tasks
> in a stable, unchanging work environment.

(T. 20).

In making the RFC determination, the ALJ stated that she considered all of

plaintiff's symptoms and the extent to which those symptoms could "reasonably be

accepted as consistent with the objective medical evidence and other evidence[.]" (T.

20).  The ALJ further noted that she fully considered "the medical opinion(s) and prior

administrative medical finding(s)" pursuant to 20 C.F.R. § 416.920c. (*Id.*). After

considering plaintiff's statements regarding her symptoms, along with the other

evidence of record, the ALJ concluded that although plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms," her

"statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the

record[.]" (T. 22).

At step four, the ALJ found that plaintiff was unable to perform any past relevant

work. *See* 20 C.F.R. § 416.965. Finally, at step five, considering the plaintiff's age,

education, and RFC, the ALJ relied on the testimony of VE Hall in determining that

plaintiff can make a successful adjustment to other work that exists in significant

numbers in the national economy that she can perform. (T. 27). Accordingly, the ALJ concluded that plaintiff was not disabled. (*Id.*).

## V.    **ISSUES IN CONTENTION**

Plaintiff argues that remand is warranted because the ALJ made numerous determinations that are not supported by substantial evidence and that the ALJ failed to apply the correct legal standards. Specifically, plaintiff contends that the ALJ erred by:

1)    rejecting the undisputed opinions that plaintiff would be off-task and/or absent beyond employer tolerances;

2)    concluding that plaintiff can meet the standing demands of light work;

3)    concluding that plaintiff can meet the lifting demands of light work; and

4)    failing to support the mental RFC with substantial evidence.

(Plaintiff's Brief (Pl. Br.) pg. 1) (Dkt. No. 10).

Defendant contends that the Commissioner's determination should be affirmed because there is substantial evidence to support ALJ's physical and mental RFC findings. (Defendant's Brief (Def. Br.) pgs. 4-22) (Dkt. No. 12).

For the reasons stated below, the court finds that the ALJ's RFC determination was not supported by substantial evidence because she failed to adequately consider the off-task and absentee considerations addressed by plaintiff's treating sources and by VE Hall. Therefore, this court remands for further administrative proceedings in order for the ALJ to properly evaluate the medical opinion evidence of record.

## VI.    RFC/EVALUATION OF MEDICAL EVIDENCE

### A.    Legal Standards

#### 1.    RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999)) (quoting SSR 96-8p, 1996 WL 374184, at *2)); *see also Babcock v. Berryhill*, No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

An ALJ must specify the functions plaintiff can perform and may not simply make conclusory statements regarding a plaintiff's capacities. *See Roat v. Barnhart*, 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *see also Martone*, 70 F. Supp. at 150 (citing *Ferraris v. Heckler*, 728 F.2d 582, 588 (2d Cir. 1984)); *LaPorta*, 737 F. Supp. at 183; *Stephens,* 200 F. Supp. 3d at 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *See Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7); *see also Angelo Michael G. v. Kijakazi*, No. 6:22-CV-00892 (TWD), 2023 WL 4763792 (N.D.N.Y. July 26, 2023) (quoting *Ferraris*, 728 F.2d at 587). "[A]n RFC finding is administrative in nature, not medical, and its determination is within the province of the ALJ." *Curry v. Comm'r of Soc. Sec.*, 855 F. App'x 46, 49 n.3 (2d Cir. 2021) (citing 20 C.F.R. § 404.1527 (d)(2)).

Furthermore, it is within the ALJ's discretion to resolve genuine conflicts in the evidence. *See Veino v. Barnhart,* 312 F.3d 578, 588 (2d Cir. 2002); *see also Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"); *Cage v. Comm'r of Soc. Sec.,* 692 F.3d 118, 122 (2d Cir. 2012) ("In our view, we defer to the Commissioner's resolution of conflicting evidence.").

### 2.    Evaluation of Medical Opinion Evidence

According to the applicable regulations,[2] the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." *See* 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c)(2017). The ALJ must "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1).

The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853. An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1); *see also Carmen*

---

[2] The regulations regarding the evaluation of medical evidence were amended for claims filed after March 27, 2017, and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded.  According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

*M. v. Comm'r of the Soc. Sec. Admin*, No. 20-CV-06532, 2021 WL 5410550, at \*4 (W.D.N.Y. Nov. 19, 2021) ("The 'supportability' factor asks how well a medical source supported their opinions with objective medical evidence and supporting explanation.")

The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Vellone v. Saul*, No. 1:20-CV-00261, 2021 WL 319354, at \*6 (S.D.N.Y. Jan. 29, 2021) ("Simply put, consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record.") *report and recommendation adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021).

An ALJ must also consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

## B.    Analysis

The court finds that the ALJ failed to adequately explain her implied conclusion that plaintiff did not experience any work preclusive limitations for time off-task and/or absenteeism, despite the restrictive opinions from Dr. Porter, FNP Finegan, Al Alfaro, LMSW, and to some extent, the consultative examiner and state agency consultants.

### 1. Mental Impairment Medical Evidence

#### a. Dr. Moore

Mary Ann Moore, Psy.D. consultatively examined plaintiff on August 27, 2020. (T. 452-57). Dr. Moore opined that plaintiff was generally cooperative and that she adequately related socially. (T. 454). Dr. Moore stated that plaintiff's thought processes were coherent, with no evidence of hallucinations, delusions, or paranoia. (*Id.*). Also, Dr. Moore noted that plaintiff's recent and remote memory skills were mildly impaired for more remote and complex information and that her judgment appeared to be fair to poor with continued depression and anxiety. (T. 455).

Dr. Moore further noted that plaintiff shows no limitations regarding understanding, remembering, and applying simple directions and instructions. (*Id.*). Plaintiff does, however, exhibit mild limitations with regard to understanding, remembering, and applying complex direction and instruction. (*Id.*). Dr. Moore found no limitations regarding plaintiff sustaining concentration and performing a task at a consistent basis. (T. 455). Dr. Moore also opined that plaintiff had moderate limitations with regard to using reasoning and judgment to make work-related decisions, for attendance at work, maintaining personal hygiene, and for being aware of normal hazards and taking appropriate precautions. (T. 455-56). Dr. Moore assessed plaintiff's insight as "fair" and her judgment as "fair to poor." Finally, Dr. Moore concluded that plaintiff has psychiatric issues which "may significantly interfere with the claimant's ability to function on a daily basis." (T. 456).

The ALJ demined that Dr. Moore's assessment was generally persuasive because it was consistent with the opinions of Dr. Juriga and Dr. Kamin and supported by plaintiff's mental status exams. (T. 24).

15

### b. Dr. Juriga

The ALJ also considered the opinion of state agency consultant Michael Juriga, Ph.D., who identified moderate limitations in two of the four broad areas of mental functioning and no limitations in the remaining two. (T. 106). Dr. Juriga opined that plaintiff had no limitations in understanding, remembering, applying information, or interacting with others. Dr. Juriga did, however, find that plaintiff had a moderate limitation in concentrating, persisting, maintaining pace, adapting, and managing oneself. (T. 106). Dr. Juriga also opined that plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 113).

The ALJ found Dr. Juriga's report to be generally persuasive because it was consistent with the opinions of Dr. Moore and Dr. Kamin and supported by plaintiff's mental status exams. (T. 24).

### c. Dr. Kamin

The ALJ considered the recommendation opinion of state agency consultant E. Kamin, Ph.D., who identified moderate limitations in two of the four broad areas of mental functioning and no limitations in the remaining two. (T. 82). Dr. Kamin opined that plaintiff had no limitations in understanding, remembering, applying information, or interacting with others. Dr. Kamin did, however, find that plaintiff had a moderate limitation in concentrating, persisting, maintaining pace and adapting, and managing oneself. (T. 82). Dr. Kamin also opined that plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from

psychologically based symptoms and to perform at a consistent place without an unreasonable number and length of rest periods. (T. 89).

The ALJ found Dr. Kamin's report to be generally persuasive because it was consistent with the opinions of Dr. Moore and Dr. Juriga and supported by plaintiff's mental status exams. (T. 24).

### d.  Mr. Alfaro

On July 20, 2021, Al Alfaro, LMSW submitted a functional capacity assessment opining that plaintiff would be off-task greater than 33% of the day because of her: (a) marked limitation to maintain attention and concentration; (2) marked limitation to maintain regular attendance without interruptions from psychological based symptoms; (3) marked limitation to perform activities within a schedule, be punctual, and perform at a consistent pace; (4) extreme limitation to interact appropriately with the general public; (5) marked limitation to accept instructions and respond appropriately to criticism from supervisors; (6) marked limitation to get along with co-workers, and (7) marked limitation to respond appropriately to ordinary stressors in a simple work setting. (T. 581-82). Mr. Alfaro also stated that plaintiff would be absent from work more than three days per month because of her mental impairments together with any side effects from her medications. (T. 582).

The ALJ determined that Mr. Alfaro's assessment was not persuasive because it was inconsistent with other medical opinions and plaintiff's mental status exams. (T. 25).

### 2. Physical Impairment Medical Evidence

#### a. Dr. Jenouri

On September 18, 2020, Dr. Gilbert Jenouri consultatively examined plaintiff. Dr. Jenouri noted that plaintiff cooks five time each week, cleans three times a week, does laundry, shops once a week, showers five times each week, and dresses every day. (T. 475). Dr. Jenouri also noted that plaintiff was not in acute distress, was able to squat about 50%, walked with a normal gait, was able to walk on her heels and toes without difficulty, used no assistive devices, and did not need help changing for the exam or ambulating on and off the exam table. (T. 476).

Dr. Jenouri also opined that plaintiff had cervical spine flexion of 40 degrees, extension of 30 degrees, could rotate 70 degrees to the right and 70 degrees to the left. (T. 477). Dr. Jenouri further noted that plaintiff had lumbosacral spine extension of 10 degrees, flexion of 75 degrees, and lateral flexion to the left and right of 25 degrees. (T. 477). Plaintiff also presented with bilateral sciatic notch and lumbar tenderness. (T. 477). Dr. Jenouri concluded that plaintiff had mild to moderate restrictions walking and standing for long periods of time, bending, stair climbing, lifting and carrying. (T. 478).

The ALJ found Dr. Jenouri's assessment to be persuasive because it was consistent with the opinions of state agency consultants Drs. Padmaraju and Saeed and supported by substantial evidence. (T. 22). The ALJ did not, however, adopt that portion of Dr. Jenouri's opinion that assessed limitations for "walking and standing long

periods" or climbing stairs, because neither Dr. Padmaraju nor Dr. Saeed thought that plaintiff had any restrictions in this regard. (T. 22).

### b. Sara Finegan, FNP

Care provider Sara Finengan, FNP ("FNP Finegan") opined that plaintiff would be off-task more than thirty-three percent (33%) of the day because her medical conditions and medication side effects would cause: a) pain; b) fatigue; c) diminished concentration; and d) diminished work pace. (T. 572). FNP Finegan also opined that plaintiff's pain would vary from day to day and that plaintiff would be absent from work more than four days each month. (*Id.*).

In support of her opinion, FNP Finegan noted that plaintiff's lumbar stenosis causes pain, weakness and muscle cramps that require rest and stretching. (T. 573). FNP Finegan further opined that plaintiff's hands "go numb" and that rest is needed during the day because of her irregular sleep pattern caused by her pain. (*Id.*).  FNP Finegan also noted that plaintiff's medications cause memory and concentration issues. (T. 573).

Furthermore, FNP Finegan opined that plaintiff can sit for approximately two hours out of an eight-hour workday, stand/walk for approximately one hour, frequently lift 5 pounds and occasionally lift 5-10 pounds. (T. 574).

Th ALJ did not find FNP Finegan's assessment persuasive because it was inconsistent with Dr. Porter's opinion, plaintiff's testimony, and the other medical opinions of record.

### c. Dr. Porter

One January 3, 2022 care provider Dale Porter, D.C. opined that plaintiff would be off-task greater than 20% but less than 33% of the workday because her medical conditions and medication side effects would cause: a) pain; b) fatigue; c) diminished

concentration; d) diminished work pace; and e) the need for rest at work. (T. 734). Dr. Porter also opined that plaintiff's pain would vary from day to day and that plaintiff would be absent from work more than four days each month. (T. 734-35).

Dr. Porter further opined that plaintiff's absenteeism and time off task would be caused by plaintiff's neck pain, tingling down her arms and lower back pain. Dr. Porter noted that when plaintiff's pain increases, "work is not functional." (T. 735).

Also, Dr. Porter stated that plaintiff can sit for approximately five hours out of an eight-hour workday, stand/walk for approximately three hours out of an eight-hour workday, frequently lift 0-5 pounds, occasionally lift 5-10 pounds and occasionally lift over 10 pounds. (T. 736).

Th ALJ did not find Dr. Porter's assessment persuasive because it was inconsistent with FNP Finegan's opinion, plaintiff's testimony, and other medical opinions of record.

### d. Dr. Padmaraju

State agency consultant Dr. S. Padmaraju opined that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) about six hours in an eight-hour workday, and sit (with normal breaks) for approximately six hours in an eight-hour workday. (T. 85). Dr. Padmaraju also noted that plaintiff should never climb ladders, ropes or scaffolds, but could occasionally, stoop, kneel, crouch and crawl. (T. 86). Plaintiff did not have any limitations for climbing ramps, stairs or balancing. (T. 86). Dr. Padmaraju also stated that plaintiff should "avoid concentrated exposure" to hazards, such as machinery and heights. (T. 87).

The ALJ found Dr. Padmaraju's assessment to be persuasive because it was consistent with the opinions of state agency consultant Dr. Saeed and consultative examiner Dr. Jenouri and supported by substantial evidence. (T. 22).

### e. Dr. A. Saeed

State agency consultant Dr. A. Saeed opined on reconsideration that plaintiff can occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk (with normal breaks) for approximately six hours in an eight-hour workday, and sit (with normal breaks) for about six hours in an eight-hour workday. (T. 108-09). Dr. Saeed also noted that plaintiff should never climb ladders, ropes or scaffolds, but could occasionally, stoop, kneel, crouch and crawl. (T. 109-10). Plaintiff did not have any limitations for climbing ramps, stairs or balancing. (T. 86). Dr. Saeed also stated that plaintiff should "avoid concentrated exposure" to hazards, such as machinery and heights. (T. 87).

The ALJ found Dr. Saeed's assessment to be persuasive because it was consistent with the opinions of state agency consultant Dr. Padmaraju and consultative examiner Dr. Jenouri and supported by substantial evidence. (T. 22).

### 3. Medical Opinion Evaluation

"In all cases the ALJ is required to provide rationale in the written decision sufficient to allow a reviewing court to conduct an adequate review of his findings." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020). "Although under the new regulations the ALJ is not required to give specific evidentiary weight to a particular medical opinion, he is

still required to articulate how he considered the medical opinion, including

explaining how he considered the 'supportability' and 'consistency' factors."

*Jaleesa H. v. Comm'r of Soc. Sec.*, 580 F. Supp. 3d 1, 8-9 (W.D.N.Y. 2022). "Both

supportability and consistency in part require comparison of the medical opinions

with other medical sources." *Mark K. v. Comm'r of Soc. Sec.,* No. 20-CV-833,

2021 WL 4220621, at *4 (W.D.N.Y. Sept. 16, 2021) (citing 20 C.F.R. §

404.1520c(c)(1)-(2)). A conclusory analysis of these factors "precludes the Court

from undertaking meaningful review" of the ALJ's decision. *Jaleesa H.,* 580

F.Supp.3d at 9; *see also William B. J. v. Comm'r of Soc. Sec.*, No. 6:20-CV-989

(LEK), 2022 WL 344059, at *5 (N.D.N.Y. Feb. 4, 2022). Indeed, "[c]ourts in this

Circuit have remanded when the ALJ failed to address either supportability or

consistency." *William B. J.,* 2022 WL 344059, at *5.

  Here, the ALJ's assessments of the medical opinions proffered by plaintiff's

treating sources (T. 572-574, 581-83, 734-36) regarding off-task and absenteeism

is deficient and lacking explanation. *See Rugless v. Comm'r of Soc. Sec.*, 548 Fed.

App'x 698, 700 (2d Cir. 2013) ("[W]e need some explanation of why there was no

discussion in the ALJ's opinion that appellant would have to miss more than four

days per month, would require unscheduled ten to fifteen minute breaks on a daily

basis, and would be off task more than twenty percent of the workday because of

his limitations."). Specifically, the ALJ's discussion of the various medical

22

opinions is limited to the following: "In their assessments, Ms. Finegan, Mr.

Alfaro, and Mr. Porter also opined that the claimant's physical and mental

impairments would cause her to be significantly off-task and repeatedly absent

from work." (T. 25). The ALJ then states:

> In the absence of any supporting explanations on the face of these check-box forms, we are required to look to the objective medical evidence for support, and in this case, this support is lacking. As discussed, the claimant's mental status exams have repeatedly documented 'normal' memory, attention, and concentration.  Furthermore, the medical evidence does not reflect a history of the claimant missing or arriving late for her scheduled appointments. Accordingly, the undersigned finds these opinions unpersuasive.

(T. 25).

The ALJ's consideration of these providers' restrictive limitations for time

off-task and absenteeism was not supported by substantial evidence, and failed to

sufficiently address how she considered the "supportability" and "consistency"

factors. "The supportability factor measures whether the medical opinion is

supported by objective medical evidence and accompanying explanations." *Darla*

*W. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1085 (TWD), 2021 WL 5903286, at *8

(N.D.N.Y. Dec. 14, 2021). While the ALJ's decision recognized her regulatory

obligation to address supportability, she failed to sufficiently analyze the

supportability of Dr. Porter's or FNP Finegan's opinions, specifically the

explanations provided by them in conjunction with their opined limitations for time

off-task and/or absenteeism. Dr. Porter and FNP Finegan did not, as the ALJ,

23

claims, simply complete the "check-box forms." (T. 25). The ALJ ignored the written explanations provided by FNP Finegan (including "Resting during the day is required."), Dr. Porter (including "When the level of pain increase work is not functional."), and to a lesser extent, Mr. Alfaro, attributing the amount of time plaintiff would be off-task and absent due to plaintiff's physical and mental impairments. (T. 572-74, 581-83). Thus, while the ALJ may have disagreed with the extent to which these treating providers found plaintiff to be limited by her conditions, the ALJ's mischaracterization of these opinions and the lack of meaningful discussion as to why the ALJ dismissed these limitations and their provided explanations preclude meaningful review by this court.

The court also finds that the ALJ similarly failed to address the consistency factor as it pertains to plaintiff being off-task and absent from work because of her mental and physical impairments. "Consistency is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Rua-Campusano v. Kijakazi*, No. 20 Civ. 7087, 2021 WL 7287628, at *10 (S.D.N.Y. Dec. 10, 2021), *report and recommendation adopted*, 2022 WL 493390 (S.D.N.Y. Feb. 17, 2022) (internal quotation omitted). Here, the ALJ states her general conclusion that FNP Finegan and Dr. Porter's opinions are "not consistent with one another or with the other medical opinions of record" (T. 23), but offers

no explanation as to how that is true beyond noting that "Ms. Finegan's assessment proposes far greater limitations than even the claimant has alleged." (T. 23).

The ALJ seems to gloss over the consistency between these two opinions as it relates to plaintiff's restrictive limitations for time off-task and absenteeism. The ALJ also did not identify any specific inconsistencies with the opinions of other medical sources, but generally cites to other "medical opinions of record." *See William B. J.,* 2022 WL 344059, at *5 (noting the lack of actual comparison of the medical opinions in the record); *see also Raymond M. v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *10 (N.D.N.Y. Feb. 22, 2021).

In fact, the opinions of record suggest that plaintiff had no less than moderate limitations in these domains. Specifically, Dr. Moore opined that plaintiff had moderate limitations for attendance at work (T. 455-56) while Drs. Juriga and Kamin stated that plaintiff was moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 89, 113). Dr. Juriga further noted that plaintiff has sustained concentration and persistence limitations. (T. 89). The ALJ's failure to discuss these opined limitations, coupled with the more severe opinions proffered by Dr. Porter, FNP Finegan and Mr. Alfaro warrant remand. *See Pamela P. v. Saul,* N0. 3:19-CV-575 (DJS), 2020 WL 2561106, *6 (N.D.N.Y. May 20, 2020)

25

(remanded warranted where "[a]ll of the opinions . . . recognize that Plaintiff has some degree of limitations in her ability to attend and concentrate on the job, though those opinions range from some degree of moderate limitation to an extreme limitation.").

The ALJ also impermissibly based his time off-task and absenteeism findings on the fact that "the medical evidence does not reflect a history of the claimant missing or arriving late for her scheduled appointments." Courts in this Circuit have consistently rejected such logic. *See Rucker v. Kijakazi*, 48 F.4th 86, 93 (2d Cir. 2022) ("[Plaintiff's] ability to attend counseling sessions—in which she is receiving treatment to alleviate her symptoms—has no bearing on her ability to attend work."); *see also Colgan v. Kijakazi*, 22 F.4th 353, 363 (2d Cir. 2022) ("[W]e disagree with the ALJ that Colgan's ability to engage in certain activities of daily living—such as caring for her two children, preparing meals and washing dishes, and driving to her medical appointments—provided substantial record evidence to discount Dr. Ward's medical opinion."). Accordingly, this court finds that relying on attendance at medical appointments is not probative of plaintiff's ability to stay on-task during an eight-hour workday or the likelihood that she would miss work several days per month because of her physical and mental impairments. *See Patrick M. v. Saul,* No. 3:18-CV-290 (ATB), 2019 WL 4071780, at *10, (N.D.N.Y. Aug. 28, 2019) ("Plaintiff's ability to attend medical

appointments and engage in other daily activities of limited duration do[es] not correlate to the Plaintiff's ability to stay on-task during an eight-hour workday or the likelihood that he would miss work several days per month . . .").

Finally, remand is warranted because the ALJ's decision did not address VE Hall's testimony (T.72) that being off-task greater than 10% of the workday (outside of two fifteen-minute breaks and a half-hour lunch break) and absent more than two days per month "would have a negative vocational impact and preclude all jobs." (T. 72); *see also Matos v. Comm'r of Soc. Sec.*, No. 20-CV-10686, 2022 WL 3084512, *8 (S.D.N.Y. June 16, 2022) ("The ALJ's failure to address the number of Matos's absences per month, his tardiness and off-task time during workday outside scheduled breaks is not harmless error because the vocational expert testified that competitive employment would be precluded for a person who is absent more than one day per month, and off task more than 10% of the time outside schedules breaks during the workday."); *Maldonado v. O'Malley*, No. 22-CV-9173, 2024 U.S. Dist. LEXIS 17361 (S.D.N.Y. Jan. 30, 2024 ("The ALJ erred by neglecting to address the VE's testimony that being off task 20% of the time or missing three or more days a week of work would make Alvarado unemployable."). As in *Matos* and *Maldonado*, the ALJ's failure to discuss VE Hall's testimony is not harmless error where, as here, the hypothetical posed to VE

Hall supports the opinions of plaintiff's treating physicians and to a lesser extent, those of the consultative examiner and state agency examiners.

## VII.   **REMAINING ARGUMENTS**

As set forth above, plaintiff has identified additional arguments why she contends the ALJ's decision was not supported by substantial evidence.  However, because the court has already determined, for the reasons previously discussed, that remand of this matter for further administrative proceedings is necessary, the court declines to reach these issues. *See Bell v. Colvin,* No. 5:15-CV-01160 (LEK), 2016 WL 7017395, at *10 (N.D.N.Y. Dec. 1, 2016) (declining to reach arguments "devoted to the question whether substantial evidence supports various determinations made by [the] ALJ" where the court had already determined remand was warranted); *see also Morales v. Colvin*, No. 13-CV-06844, 2015 WL 13774790, at *23 (S.D.N.Y. Feb. 10, 2015) (the court need not reach additional arguments regarding the ALJ's factual determinations "given that the ALJ's analysis may change on these points upon remand"), *report recommendation adopted*, 2015 WL 2137776 (S.D.N.Y. May 4, 2015).

**WHEREFORE,** based on the findings above, it is

**ORDERED**, that plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **GRANTED**; and it is further

**ORDERED**, that defendant's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED**, that the decision of the Commissioner be **REVERSED**, and this action be **REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum-Decision And Order.

Dated:  March 5, 2024

Mitchell J. Katz
U.S. Magistrate Judge